Filed 8/19/14  In re L.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.T. et al., Persons Coming Under the Juvenile Court Law. | C076150 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.T.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD232430, JD232431) |

Tianna T., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395 [unless otherwise stated, statutory references that follow are to the Welfare and Institutions Code].)  Mother contends the juvenile court erred in terminating her parental rights because it failed to apply the beneficial parental relationship exception to termination.  We affirm the orders of the juvenile court.

FACTS AND PROCEEDINGS

The minors, six-month-old L.T. and 19-month-old P.T. were detained in May of 2012. Mother had a significant history of drug use and the parents were involved in a domestic violence incident a month earlier. L.T. was a premature baby and remained in the hospital for a week after birth. In December 2011, mother agreed to an informal supervision plan and voluntary placement of L.T. for six weeks but failed to utilize the services by continuing to test positive and engaging in domestic violence. The juvenile court sustained the petition and ordered services for both parents.

Father briefly reunified with the minors in January 2013 while mother continued in services. By late February 2013, the minors were removed from father's custody and services for the parents continued.

The 12-month review report recommended termination of services as mother continued to struggle with her addiction issues. Mother had unsupervised visits at her transitional living facility and visits were generally positive. The juvenile court extended services to the 18-month limit.

In August 2013 mother filed a petition for modification seeking return of the minors, alleging she had completed her service plan. Father was deceased by this time from unknown causes. The juvenile court ordered return of the minors in mid-August 2013.

Within six weeks, a supplemental petition was filed to remove the minors from mother's custody because mother stopped drug treatment, was evicted from the transitional living facility for failing to comply with the rules and had left the minors with unapproved caretakers. The court ordered the minors detained.

The reports for the supplemental petition stated mother was often seen without the minors. When the minors were detained, they were found with an unapproved caretaker. Despite extensive substance abuse treatment services, mother admitted drinking and was

2

found in a car with two men who had been drinking when police stopped the car. The reports recommended termination of services because mother had not benefitted from 17 months of services although she had completed some of the programs. In October 2013, the court sustained the supplemental petition and terminated services.

The report for the selection and implementation hearing stated that mother had attended visits twice a week but missed three visits and visitation was decreased to once a month. The young minors were assessed as generally adoptable. P.T. continued to have some delays and to show aggression toward L.T., however, both conditions were resolving over time with intervention by the caretaker. The current caregiver was not interested in adoption.

At the selection and implementation hearing in March 2014, the social worker testified that the minors remained generally adoptable and 15 to 20 home studies had been submitted for them. The social worker had observed a visit and saw that mother did well handling P.T.'s aggression toward L.T. and had engaged both minors in activities. In the social worker's opinion, P.T. did have a bond with mother but both minors needed a stable home after the tumultuous year of being returned to one parent and removed then returned to the other parent and again being removed. P.T. in particular was feeling the effects of loss and could benefit from permanency.

Mother testified the minors were happy to see her and cried when she left at the end of visits. Mother wanted the minors returned because they had suffered too much loss.

The court found the minors had spent most of their lives out of the custody of either parent and their relationship with mother was impaired by mother's substance abuse. The court observed that, due to the chaos of their lives, the minors had a special need for permanency and concluded, based on the totality of the circumstances, that there was no detriment in terminating parental rights. The court ordered a permanent plan of adoption and terminated parental rights.

3

Mother argues the juvenile court abused its discretion in terminating parental rights because she established the beneficial parental relationship exception to the preference for adoption.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*.' If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368 [citations omitted, original emphasis].) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights. (*In re Cristella C*. (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when: "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) However, the benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural

4

parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child. (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

While the court found mother visited regularly and had a relationship with the minors, that relationship was not enough to avoid termination of parental rights when weighed against the minors' special need for permanence and stability resulting from the chaos of their lives due to the parents' inability to benefit from services and maintain the minors in the home. L.T. had less than six months of in-home contact with her parents, spread over two years, and part of that time was with father, not mother. Even when the minors were briefly returned to mother's care, mother was often seen without them. Mother was unable to demonstrate that she could put the minors' interests before her own, a necessary precondition to establishing a safe and stable home in which the minors could flourish. While it was clear that mother loved the minors, they needed more than love, they needed a parent who could, and would, meet their needs. The juvenile court did not abuse its discretion in concluding mother had failed to establish the beneficial parental relationship exception to termination of her parental rights.

DISPOSITION

The orders of the juvenile court are affirmed.

      HULL      , Acting P. J.

We concur:

    MURRAY    , J.

    HOCH    , J.